The next case called is Rogers v. Rogers. Counsel? Family support. Counsel? Good morning. Good morning. I want to start off by saying I've got quite the head cold. My voice is cracking a little bit. If you have trouble understanding me, please sneeze. I will be sneezing along with you. All right. We'll already see that then. My allergies are terrible. My name is Megan Gilbert and I represent the appellant Charles Rogers from the law firm Blake Law Group, PC. And today we are asking the court to reverse the trial court's decision awarding the appellee Christine Rogers permanent maintenance in the amount of $600,000 per month. By way of introduction and brief background, the appellant filed his petition for dissolution of marriage on March 30, 2010. At the time that the appellant filed the petition, the parties had been living separate and apart for a period in excess of 15 years. At the time of his initial pleading, the appellant's financial statement reflected a gross monthly income of $2,226 per month with $250 from self-employment. Since the time of filing those initial pleadings, the appellant's income has decreased. He no longer receives $400 in rent from family members as he has filed an affidavit in support of that. And he also no longer receives $250 from self-employment due to a disability preventing him from working the same self-employment job. The appellant's initial financial statement reflected a gross monthly income of $1,262 per month. Along with her initial pleading, the appellant filed a petition for temporary maintenance. The same was denied by the child court. On November 13, 2012, the child court entered a supplemental judgment for dissolution of marriage. Part of this judgment awarded the wife $600 a month in permanent maintenance. In the case so far, the standard of review is an abuse of discretion standard. An abuse of discretion, the court knows, occurs where no reasonable person would take the view adopted by the child court. Under Section 504A of the Illinois Marriage and Dissolution of Marriage Act, an award of permanent maintenance was not appropriate in this case. Really, there's a common sense argument in favor of the appellant in this case. The length of time that the party spent actively living as husband and wife as a marital unit simply does not justify an award of permanent maintenance. The parties married in August 1985. They've been married for approximately 10 years at the time of their separation. At the time that the appellant filed his initial pleadings, the parties have been separated for 15 years. It wasn't a separation where, as husband's testimony reflects, he was coming in and out of the home. When they separated, they had relatively little contact aside from issues surrounding their children. There wasn't much mentioned about the children because I presume they're adults. Yes, they're all adults. But there were how many children? I believe there were three children. And they were biological children of the husband as well? Yes. Okay. And she raised the children? She did raise the children. The appellant did provide assistance when he could. He would have contact with the children. He did provide certain... There was never any formal child support? There was never any formal child support in the case, no. Wife testified at the time of trial that she had been supporting herself without the assistance of the husband since the parties' separation in 2002. So the appellate had the opportunity for approximately 15 years after separating from the appellant to file some sort of petition with the trial court seeking the relief that was available to her, whether this be in the form of child support or spousal support. And she failed to do so for 15 years. The appellant would argue that a public policy argument could be made against saddling him with the burden of providing her maintenance when the record shows that she's been able to support herself without his assistance for a period of 15 years. You're not... You are doing this lack of action for these years as preclusion or just saying it should have been given more weight by the trial court? I would say that it should have been given more weight by the trial court. As I said, she had the ability. She never once sought any remedies through the court, whether it be for spousal support or for child support while the children were still miners. But you're not saying that that period of time where she did not act precluded... No, I didn't. I would not argue that it precludes an award of maintenance. It just should have been given some weight by the trial court. In addition, it's the position of the appellant that the appellee will not suffer an increased standard of living by not receiving an award of maintenance in this case. As we know, the benchmark determination when awarding maintenance is the reasonable need of a spouse seeking maintenance in view of the standard of living established during the marriage, the ability to become self-supporting, the income-producing property of a spouse if there is any, and the value of the non-marital property. In the instant case, there is actually no testimony at the trial court level as to the standard of living established while the parties were living in the same marital home as husband and wife. We do know that the wife was, again, self-supporting during the parties' separation. We know relatively little about their standard of living when they were living together, again, as husband and wife. Looking at their financial statements initially filed, though, we can assume that there was not a high standard of living given the low figures that each of them reported as their monthly income. Permanent maintenance is appropriate where there is evidence that the recipient spouse is either unemployed or employable only at an income substantially lower than the previous standard of living. The appellee is currently maintaining employment, and the record would reflect that she has maintained employment throughout the parties' separation. Again, the appellee testified that she was employed the length of the marriage, and her employment now is not substantially different from the employment that she enjoyed during the marriage in the parties' separation. The record would reflect that she had been involved in maintenance, cleaning-type jobs. She's currently employed with Goodwill in kind of a maintenance-cleaning-type position. She also works part-time at her church cleaning the same. You're not disputing her income? No. Seventy-two hundred dollars is what I just broke down based on 600 a month. I believe it was eight. Well, her initial financial statement showed a monthly income of gross of $1,200. The court made a finding, though. I believe that the court's finding was approximately $800 a month, $823 perhaps. Okay. I'll have to check again. I thought it was lower than that. Somewhere around the poverty line? Yes, ma'am. Yes, it was a very low income level. But again, she did maintain that line of work, that type of work, throughout the duration of the parties' marriage to separation, and is still maintaining that type of work. The parties, were they married when this personal injury occurred? They were married when the personal injury occurred, yes. That was during the 15-year separation period, but yes, they were still husband and wife at that point in time. In addition, the appellant would argue that the appellee's health stop did not warrant an award of permanent maintenance, and in addition, that the court gave too much weight to such a factor. Again, maintenance is generally appropriate where a spouse is not employable because of a physical condition. At the trial court level, the appellee testified that her knee gets backwards, and then her knee gets back. The appellant would argue that these are not serious health conditions that would prevent her from working. Again, she has been working with these conditions throughout the parties' separation, the divorce proceedings, and continues to work with these conditions. In addition, we would argue that there is not a significant disparity in income and property between the two spouses. Again, maintenance is not the absolute right of every party, and should mainly be reserved for circumstances of necessity. The appellant would argue that, again, given the length of the separation between the parties and the fact that she did not seek assistance from the appellant for 15 years, she is not shown a necessity in this case. Again, both parties developed independent standards of living essentially in 1995 when they separated. They've been living apart for over a decade, essentially pursuing their own independent lives as if they were divorced. We would argue that there's no need to equalize that standard of living that essentially ceased to exist in 1995. Appellee's salary, although it is low, has been the salary that she has made her living on and sustained herself on since 1995. And we would argue that because there's no decrease in that salary, she should be able to maintain the standard of living, be it below standard than it is, going into the future. Again, this is not a case where a combined income in the household was significantly higher than once the spouse on their own, such as in the marriage of Brayden. In that case, the wife testified that her salary alone couldn't maintain the standard of living. But again, given the relatively low standard of living that they would have combined, it would be our argument that the appellee could maintain that standard of living on her own salary. Under the Supplemental Judgment for Dissolution of Marriage, entered again on November 13, 2012, each party received an approximately equal share of the marital estate. Each party was awarded similar assets, and in fact, the appellant was saddled with the biggest debt of the marriage, which was the debt of the marital home. The appellant testified that from the time of the party's separation in 1995 until 2002, so for a period of approximately seven years, she maintained the marital home without the assistance of the appellant. However, from 2002 until the present, so approximately 11 years, the appellant has maintained the same marital home, the same mortgage payments, the same tax payments, completely independent of the wife. Finally, the appellant would argue that a complete division of the marital assets of the parties is yet to be determined, and as such, it was inappropriate to award the appellate any payments at this time. And in the Read the Marriage of Amado, the court held that before a trial court can render an award of maintenance, they must make a determination as to the disposition of marital assets. Here, the appellant has an outstanding personal injury claim that has yet to be decided. A settlement has yet to be reached on that. We do not know the exact figures of what that settlement would be, as they're not yet known, but it is quite possible that it could be a settlement that could assist the wife and render an award of maintenance no longer appropriate because she does receive a sum from that settlement that would allow her to meet reasonable needs. So again, we would argue that an award of maintenance, a permanent maintenance, was not appropriate before knowing the amount of the settlement and the amount that the wife or the appellate would receive from staying. So in conclusion, we would ask that this court reverse the trial court's decision awarding permanent maintenance, or in the alternative, remand this case to the trial court for further decisions that matter. In addition, the appellant stands on his brief with respect to any points not covered in this argument today. Are there any questions from the bench? I don't think so. I don't believe so. All right. Thank you very much. May it please the court. Justice Goldenhurst, Justice Chapman, Ms. Galbraith. My name is Jason Carraway, cultural offices, and I represent Ms. Rogers in the matter before the court today. There are two issues before the court. The first issue, which Ms. Galbraith took last, which I'd like to take first, is whether the court has used its discretion in making this permanent maintenance award in light of this pending personal injury lawsuit. And I will address that issue as an event, because what happened is that the trial court knew about this, and the parties stipulated on the record to preserve that issue to a further date and have the court go ahead and enter this award. It's page 85 of the trial transcript. Well, then does that make this an award of temporary maintenance or permanent? Justice Goldenhurst, the parties in what happened in this personal injury suit, like most, it may be a great personal injury suit. It may not. Right. Of course. And so what Judge Rice did was he, with the stipulation of the parties, agreed to preserve that issue for down the road when that's over. It could be a million dollars. It could be zero. Is there an FBLA case? I'm sorry. No, go ahead, please. There's some talk about railroad retirement. I'm wondering if the lawsuit is an FBLA case. You know, Justice Chapman, I don't know a lot about that case from the record, but from what I could glean in doing both personal injury and work myself, it appears he was on the job while injured in a motor vehicle accident. Okay. So it's unrelated to his employment. Oh, you are thinking it's... It was on the clock, but in those cases, you can bring both sometimes a FBLA case and a work comp case. Justice Goldenhurst, to answer your question directly, what the parties can do in this case is if that lawsuit comes down, Justice, I'm just going to make something up, I don't know anything about it, a million dollars, we know what the act says. These parties can go back in with, you know, this record and this stipulation, and Judge Rice can modify the award. You anticipated my next question. You stipulate that they could come back. Do they come back on a redetermination of maintenance, or do they come back in a petition to modify, and they have different criteria? I think to answer your question, the parties could come back with both. If there's a million dollars here, look at what Judge Rice did. Judge Rice said, I've got all these factors in front of me, which is what he's supposed to do. And he weighed those factors, and he said, based upon the disparity in income and all of these things, by the way, the wife had a comp case in this too, which he divided out. But that was resolved. It was resolved. It was $9,000 workers' compensation itself. So if you take Amado, which is the case that we're sort of arguing about a little bit about what it means, Amado had millions and millions of dollars in income-generating property. It was a horse racetrack in that case. So those were known entities, the realty? Correct. Correct. And the reasoning from Amado, and to answer your question, Justice Goldenhurst, and how it impacts our case is, the trial court judge in that case said, if we split income-generating properties, the wife may not need me. Because she's going to have, and in that case she got $879,000 in cash. But in this case, Judge Rice looked at the income of the parties. The parties agreed to bring that issue up later. Justice Goldenhurst, I think you're right. Those do have different standards. But by this court affirming Judge Rice's order doesn't preclude the right to future proportionment of the personal income settlement. Isn't there, wouldn't there be a difference as to who bears the burden of proof? If it's a modification of a permanent versus the kind of end of a temporary? Agreed. Absolutely agreed. And wouldn't you have, wouldn't the party bringing the motion to modify, assuming that the campaign agreement worked out, would have the problem of showing a change in circumstances? I understand your point, Justice Goldenhurst, but I think the change of circumstances would be, if we're envisioning what I think the court's asking, which is a large amount of money that would be divisible, the change in circumstances would be, now, instead of dividing up what's really no offense to the parties, not much to divide up, we'd be talking about dividing up a whole heap of cash. And there would be a change in the assets because it's pretty clear they're marital. It was incurred, the injury occurred after or during the marriage, I'm sorry. Right. So there would be that change. Even if the court gets past this stipulation argument, what's going to happen in the future? The argument that Ms. Gilbreth made in her brief has been weight. It's a longstanding rule that if you don't bring these issues up that you want to talk about in this room until you get to this room, well, it's too late. What happened in this case was, after the judgment, dissolution of marriage came down, awarding the personal, or the maintenance of $600, Mr. Rogers and counsel filed a motion to reconsider. Nowhere, nowhere in that motion to reconsider is this amato argument. The amato argument shows up for the first time in this brief. And I think I briefly touched on it, but there's no case, no case that says there's a hard and fast rule that a trial judge must, must divide up all the property in question before you do anything else. There's no case that says that. Amato doesn't say that. Amato is about billions of dollars in income generating property. And the trial judge, I think correctly, in amato, said we need to figure that out first before we move on and see what is happening. There's no case that says that. Furthermore, it was then and is now pure speculation of what this case is or what it's worth. It could be worth zero. It's pure speculation. So even under amato, there's no rule that said Judge Rice had to wait, had to forego this judgment until that personal injury case came down. So stipulated to can be raised again, albeit with the court's good questions. Waived. And even if you follow amato, property is just one factor. That's what's so interesting about this case and all these cases that come up. This is a judgment call. This is an abuse of discretion standard. So let's look at what Judge Rice did. This is, Justice Chapman, answer your earlier question. The income disparity in this case is $2,719 for Mr. Rogers and $832 for Mrs. Rogers. Judge Rice, her life testimony, her evidence, it's all there in the record. Opposing counsel would like to say that Judge Rice may have got this wrong. We should have given more weight to the fact that Mr. Rogers' income had changed. This is what he said about that in the motion to reconsider, page 10 of the trial court transcript. Judge Rice, well, I've gone through the numbers again, and here's my problem. The mother didn't testify. It certainly is rather suspicious that after we took into consideration her payment to Mr. Rogers of $400 a month, that the payments coincidentally stopped as soon as this judgment was entered. Judge Rice didn't believe Mr. Rogers. He didn't. Now, as I understand, maybe one of the reasons that the marriage went on on paper for a long period of time was a matter of insurance, and now she will no longer be eligible for his insurance. And was there testimony or evidence of what she would then be paying for a policy? Insurance was a very important part of Judge Rice's decision, as you mentioned. That's one of the factors. What does Ms. Rogers need? And one of those factors you looked at was insurance. This is what he said, same page that I read from before, 10 on the record. My concern, this is in the motion to reconsider, my main concern was making sure she had health insurance. And I think given that he gets the tax break on the maintenance, the actual maintenance that he's paying is something less than $600 a month, which I suspect the cost of health insurance is at least that. That's what Judge Rice said, record page 10 on the record. How old was your client? She was like 56 or something, I think. 57? Yeah, at the time this was written. What were they doing, waiting for Medicare? She was probably a Medicare recipient. I don't know this, but it's 65, 67. And that's important because both of those questions lead me to point two. The second part of this case is did he balance the factors right? Now, I tried to wrap my mind around this, but I think this is what the argument is from opposing counsel. For 10 years, from 1985 to 1995, my client had health insurance. She had a house they lived in together. They had children that they raised together. And then something happened in 1995. See, what they want to say is that my client has done just fine since Mr. Rogers left. That is just not true. And the extension of that argument is since she's suffered since 1995 to present, she can continue suffering at the same rate. That makes no sense. They want to make a public policy, common sense argument. The facts of this case are in 1995, Mr. Rogers left. The facts of this case are he left to start another life with a different family, and that was his choice. A choice he was free to make. What happened after that was my client's life declined. What happened after 1995? She lost her health insurance. She had been living in the Maryville Home Justices, but she was forced to quit paying that back to Mr. Rogers because it was in foreclosure. Mr. Rogers paid not one cent to my client for that house, not one cent for the property, and while there is some testimony that he helped with the children when he could, there's no proof of that. So Mr. Rogers does not get the benefit of that bargain. He does not get to come into court and say, Judge Rice made a mistake in evaluating these factors because when I left in 1995, I didn't do anything. Your client has suffered since then. Oh, by the way, she's suffering in the same way now. I don't have to pay maintenance. What did Judge Rice do? In her testimony, he held there was an income disparity. Mr. Rogers had $27.19 a month. My client had $8.32. My client works at Goodwill, has no health insurance benefits whatsoever. My client has undisputed learning difficulties. She used to work at the YMCA. She lost that job due to those learning difficulties. It's undisputed in the record. It's undisputed that Mrs. Rogers has health problems. Excuse me. Are we going to see that in the record, that there is some evidence of learning disabilities? She testified to that, Your Honor. There weren't any medical records submitted by either party. Both parties were given the opportunity to direct and cross-examine on that point. Ms. Fisher, from my office, who handled the trial, candidly asked and developed that evidence at trial, and Judge Rice was able to hear that during the course of the hearing that occurred. The parties agreed Mr. Rogers would keep the mayoral house. Judge Rice heard that she had insurance during their marriage, no longer does. This is what the order says, quote, Taking into consideration the factors in 705 ILCS 5-503, the cases interpreting the same, the credibility of the witnesses, the court has divided the mayoral property and debts to the parties in a fair and equitable manner. This is an abuse of discretion case. To change this decision by Judge Rice, this honorable court must find that no reasonable trial court judge would have made this decision to award $600 in maintenance. The opposing counsel wants to say there's not income disparity. Justice Chapman pointed out correctly that my client's income is below or at the poverty line. They want to make a common sense argument. That's what we have trial court judges for. Judge Rice reviewed all of this information, not once, twice. There's a motion to reconsider. Both parties came back. They wanted to raise this. We've got to divide the property issue first. Stipulated and reserved, point one. Point two is way. It only shows up in the brief. They knew after the judgment came down of $600 in maintenance, they knew that when they filed their motion to reconsider, this argument was not present. That's not in dispute. They want to make a public policy argument. Let's talk about what the case law says. The case law and the statute in the act say the judge has to weigh the facts. The judge was there. He weighed it. It's not about public policy. It's about the facts that were in evidence. Judge Rice needs to be affirmed. Thank you. Thank you, counsel. Counsel? Just to touch on a few facts. The personal injury lawsuit in dispute, that is an FDLA case, just to clarify. It's an FDLA? Yes. Okay. And we would argue with respect to a motto that, in fact, given Rice's low income, a settlement from this personal case might, in fact, sufficiently change her financial circumstances enough that an award of maintenance is no longer needed for her to maintain her basic needs, if, in fact, she needs an award of maintenance to meet those needs. With respect to the income disparity argument that was being made, Mr. Rice's income has, in fact, changed since the time he filed those initial pleadings. At the time he filed those initial pleadings, he was both working for the railroad and maintaining self-employment. He's been injured since the disability case was pending, and his income is now fixed income due to that disability. He is no longer able to work from self-employment or gain any extra means to support his reasonable needs at the end of the month. With respect to Mr. Rogers' mother and her lack of testimony as to her income, Mr. Rogers did submit an affidavit, which you will find in the record on appeal, arguing that his mother is no longer able to contribute to the household. He also argued saying that, the motion to modify, that he's simply no longer receiving those funds. His elderly mother is simply no longer able to help contribute in the way that she was before. Also, with respect to the health insurance, I believe that Mrs. Rogers testified at the trial court that her health insurance would be approximately $400 a month if she was able to find sources that could provide her insurance. So that leaves her with about $400 a month to live on? Yes, Your Honor, but assuming out of the maintenance award, there would be an extra $200. If Mr. Rogers was to continue paying that $600 a month in maintenance, she would have an additional $200. And possibly now, under health care reform, it is possible that that number is lower. We just don't know at this point in time. In addition, husband isn't arguing that Mrs. Rogers should continue to suffer. His argument simply is that she had relief available to her, and if her situation was so dire, these 15 years that the parties were separated, why did she not seek out these remedies that were available? Why did she wait until after he had filed his petition for dissolution to bring a petition for temporary relief, which was denied at the trial court? With respect to the marital home, Mr. Rogers has maintained the marital home since 2002 when the wife indicated that she could no longer afford the same. The wife quit claiming to keep the home to Mr. Rogers at that time, and he has been responsible from 2002 to the present for paying the mortgage associated with the home, for paying the real estate taxes. So while Mrs. Rogers, from 1995 to 2002, bared that burden on her, Mr. Rogers continues to this day. With respect to Mrs. Rogers' former employment at the YMCA, she was fired from that employment. She was fired from that employment. I believe that the record would reflect that that job had benefits available to it. She was let go. She lost those benefits. Again, we make a public policy argument that Mr. Rogers should not bear the burden of her being fired from a job. In conclusion, we would ask that this court reverse the trial court's opinion or, again, in the alternative, remand the trial court level for further determination on the matter of removal. Thank you. Thank you, counsel. Thank you. I appreciate it. The briefs and arguments of counsel will take the case under advisory comments. The board recess until 1 o'clock.